IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

TINA LYNN MORTENSEN,

        Plaintiff,                      OPINION AND ORDER

    v.                                         14-cv-500-wmc

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration,

        Defendant.
---

Plaintiff Tina Lynn Mortensen seeks reversal of a Commissioner of the Social Security Administration's decision finding her ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act. The Commissioner has filed an answer, along with the lengthy record of Mortensen's administrative proceeding and both parties have submitted briefing. After considering all of the parties' submissions, the administrative record and the applicable law, the court will affirm the Commissioner's decision for reasons set forth below.

FACTS[*]

I.    BACKGROUND

In 2011, Mortensen filed applications for social security disability insurance benefits and supplemental security income. Mortenson alleged that she became disabled on May 1, 2009, following unsuccessful knee replacement surgery on her right knee.

---

[*] The following facts are drawn from the administrative record (AR).

After the state disability agency denied her applications initially and upon reconsideration, Mortensen requested a hearing before an administrative law judge.

## II.     Mortensen's Hearing Before the ALJ

Mortensen appeared for a hearing before Administrative Law Judge Joseph D. Jacobson in Madison, Wisconsin, on January 22, 2013.  At that time, Mortensen was a 43-year-old high school graduate.  Although not currently working, Mortensen described her previous work experience, including as a sales associate and then manager of a retail kitchenware store from 2005 through the onset of her claimed disability in 2009.  Her duties had included ordering and stocking inventory, which required her to routinely lift at least 40 pounds.  She also did paperwork, scheduling, hiring and firing of employees, as well as "cashier type things."  From 1999 through 2005, Mortensen also worked as a bartender and as a full-service clerk with some managerial duties at a video rental store.

From the age of 24, Mortensen estimated that she had undergone 15 surgeries on her right knee.  In January 2009, Mortensen had surgery to replace her right knee. Unable to return to work following the surgery, Mortensen lost her job in September 2009.  Since the knee replacement, Mortensen has had four more surgeries involving her right knee. Mortensen also testified that she had pain in her head, back, shoulders and neck.  In addition, her right leg, knee and foot tend to swell, becoming numb, and she was bothered by nerves in her skin and urinary incontinence that required frequent, unscheduled bathroom breaks.  Finally, Mortensen suffered from severe migraines at least twice a week.

Mortensen indicated that she was treated on a monthly basis by an orthopedist (Dr. Plooster) for pain in her legs, back and neck.  A rheumatologist (Dr. Cox) also diagnosed Mortensen with fibromyalgia and degenerative disc disease.

In terms of work limitation, Mortensen testified that she was unable to stand for more than five minutes before having to sit down.  Moreover, she reported being only able to sit for ten minutes before her right foot "goes numb."  Even if she could sit, Mortensen explained that her arms and hands also go numb and that she experienced "shooting pains" down the tops of her shoulders from fibromyalgia.  She reported being able to lift only around five pounds and needing a walker or cane to ambulate since her knee replacement in 2009.  Finally, at just over five-feet-five-inches (5'5") in height and weighing 230 pounds, Mortensen testified to spending most of her day lying down and only leaving the house for doctors' appointments, with her children doing all of the household chores.

After hearing testimony from Mortensen, the ALJ heard testimony from a vocational expert.  The vocational expert was asked by the ALJ to assume a person of Mortensen's age, education and work experience  able to work at the sedentary level, but who would require a "sit stand option" defined as "being allowed to sit or stand alternatively at will provided that they're not off task more than 10 percent of the workday."  (AR 76-77.)  Such a person would be further limited to "simple, routine, repetitive tasks."  (AR 77.)  In response to this hypothetical, the vocational expert testified that such a person would not be able to do any of Mortensen's past relevant

3

work, but that there were "sit stand" sedentary jobs in the local economy that such a person could perform.

### III. The ALJ's Decision

#### A. Initial Analysis

Based on the record before him, the ALJ found Mortensen "not disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(d)(1)(A). In reaching this conclusion, the ALJ purported to perform the five-step analysis established by the Social Security Administration. *See* 20 C.F.R. §§ 404.1520, 416.920. Under these sequential steps, the ALJ is required to consider: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant has the ability to perform his or her past relevant work; and (5) whether the claimant is capable of performing work in the national economy. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Here, the ALJ found at step one that Mortensen was not currently employed. At step two, the ALJ found Mortensen had several, severe impairments, including: right knee replacement with ongoing complications, lumbar degenerative disc disease ("DDD"), obesity, sleep apnea and fibromyalgia. The ALJ found, however, that none of these conditions met or equaled the severity of one of the listed impairments found in 20 C.F.R. § 404, Subpt. P, App. 1, and, therefore, they were not *per se* disabling at step three.

### B. Residual Functional Capacity

After considering the entire record, the ALJ then found at step four that Mortensen had the residual functional capacity ("RFC") to perform sedentary work subject to the following restrictions:

> The claimant must have a sit/stand option. She is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged ambulation. She is also limited to simple, routine, repetitive tasks. Additionally, she must be allowed to be off task up to 10% of the workday in addition to regularly scheduled breaks and must be allowed to elevate her legs to chair level several times per day; these periods of elevation may coincide with scheduled breaks and the "off task" periods described previously.

In reaching this conclusion, the ALJ found that Mortensen's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for a number of reasons. First, although Mortensen testified that she had not worked since May 1, 2009, the ALJ noted evidence in the medical records showing that Mortenson was working for her mother in a bar 5 days a week in 2011, requiring her to be on her feet for 8 hours at a time. The ALJ found this particularly troubling: "The fact that the claimant provided inaccurate information on a matter so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable. It also demonstrates that she has sustained daily activities far greater than what she alleges."

Second, the ALJ noted further that Mortenson collected unemployment compensation during 2010 and 2011, requiring her to state that she is "able and

5

available to work full time." At that time, Mortensen reported no work related functional limitations in connection with her unemployment application. The ALJ found this to be "inconsistent with her current allegation that she has been totally disabled and unable to work during that same time."

Third, the ALJ found that although the record substantiated Mortensen suffered from severe pain, particularly with regard to her right knee, the severity of her alleged pain was not supported by the medical evidence of record or the opinions of her doctor. The ALJ found based on Mortensen's medical records that her knee surgeries did not preclude a full time work schedule provided she could switch positions and elevate her legs intermittently to reduce swelling. Although Mortensen also alleged disability due to DDD, the ALJ noted her objective testing revealed only "mild abnormality." Similarly, while diagnosed with fibromyalgia, the ALJ found little objective medical evidence to corroborate her claimed limitations. For example, Mortensen had not pursued treatment recommendations or made lifestyle changes with respect to her sleep apnea or obesity. Finally, the ALJ found no medical evidence to corroborate the severity of her complaints about migraines or incontinence.

### C. Employability

Based on the testimony of the vocational expert, the ALJ ultimately concluded at step five that in light of Mortensen's age, education, work experience and residual functional capacity, she could not perform her past work but was "capable of making a successful adjustment to other work that exists in significant numbers in the national

economy." Therefore, she was deemed "not disabled."

The SSA Appeals Council denied Mortensen's request for review, meaning that the ALJ's decision became the Commissioner's final decision. It is that decision which Mortensen now asks this court to overturn.

OPINION

Ordinarily, a federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). In conducting this review, a district court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In particular, credibility determinations are generally within the province of the ALJ. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination is "afforded special deference" because the ALJ is in the best position to see and hear the witness. *Id.* For this reason, the court will only overturn an ALJ's credibility determination if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

A. Whether Plaintiff Met the Criteria of a Listed Impairment

Mortensen argues that the ALJ should have found her disabled at step three of the five-step analysis because she meets the criteria of at least one of the musculoskeletal

impairments listed under 20 C.F.R. § 404, Subpt. P, App. 1. In order to meet or equal a listed impairment, however, Mortensen bore the burden to present specific medical findings satisfying all of the criteria of the particular listing. *See* 20 C.F.R. §§ 404.15129(a), 404.1520(a)(4)(iii), (d), 404.1525, 404.1526. In this respect, Mortensen merely lists various diagnoses and subjective complaints, but she does not meaningfully challenge the ALJ's finding that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments" (AR 15.)

Findings that a claimant meets or equals a listed impairment are typically supported by a physician who has considered the claimant's work-related functional limitations. As did the ALJ, this court searched the record and could find no medical evidence showing that any of Mortensen's impairments had the requisite equivalence with a particular listing found in 20 C.F.R. § 404, Subpt. P, App. 1, nor does Mortensen offer any. To the contrary, statements provided by her treating orthopedic specialist, Dr. Michael Plooster, indicate that she was capable of returning to medium-level work without restrictions and made no mention of any severe impairment.

As noted by the ALJ, only one of Mortensen's treating physicians -- Dr. Plooster -- provided a medical source statement that included an assessment of work-related functional limitations. (AR 16, 18, 640.) Moreover, the ALJ substantially incorporated Dr. Plooster's assessment into his RFC finding (*i.e.*, that she was able to perform a range

of sedentary work with certain accommodations). (AR 15-16, 18, 640.) Although Dr. Plooster found that Mortensen was unable to work and restricted her to minimal lifting restrictions on June 10, 2009, he also indicated she was capable of light-to-medium lifting on June 22, 2009, and that she could return to work on June 24, 2009, subject to certain restrictions. (AR 425-26.) In August 2009, Dr. Plooster noted that Mortensen had improved further and did not indicate that any restrictions were necessary. (AR 424.)

The only other assessment of Mortensen's work-related functional limitations came from Dr. Pat Chan, a state agency reviewing physician on Mortensen's reconsideration request, who opined that Mortensen was capable of a full range of sedentary work.[1] (AR 480-86.) The Disability Determination and Transmittal form completed by Dr. Chan, indicates that he considered her multiple impairments, but determined that Mortensen was not disabled, let alone that she met a listing. (AR 99.) As a state agency medical consultant on a Disability Determination and Transmittal form, Chan's signature ensures that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review, and other documents on which medical consultants may record their findings may also ensure that this opinion has been obtained at these first two levels of review. *See* SSR 96-6p; *see also Scheck v. Barnhart*, 357

---

[1] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

F.3d 697, 700 (7th Cir. 2004) (finding that disability forms completed by state agency physicians "conclusively establish" that a physician designated by the Agency has given consideration to the question of medical equivalence).

Based on this record, the ALJ correctly found that the evidence did not show that Mortensen met the requirements for any listed impairment. Moreover, Mortensen has not identified other evidence in the record that calls this finding into question. Thus, she has failed to demonstrate a sufficient basis with which to overturn the ALJ's decision.

### B. Whether the Residual Functional Capacity Assessment was Accurate

Mortensen also argues that the ALJ's RFC assessment was flawed, having found that she was able to perform sedentary work. As noted above, the ALJ determined that Mortensen retained the residual functional capacity to perform sedentary work with several additional limitations, including a "sit/stand option," an accommodation in the form of a "hand-held assistive device for uneven terrain or prolonged ambulation," regularly scheduled breaks and a certain amount of time spent "off task," as well as the ability to "elevate her legs to chair level several times per day." (AR 15.) In formulating his residual functional capacity, the ALJ appears to have considered Mortensen's subjective allegations, the objective evidence of record, and the opinion evidence. (AR 16-18.)

The ALJ first noted that his RFC finding was consistent with the limitations indicated by Mortensen's treating physician, Dr. Plooster. (AR 16.) The ALJ also gave Mortensen the benefit of the doubt with respect to her subjective allegations, including

her claimed need to use a walker or cane. (AR 17.) Additionally, the ALJ found more restrictive limitations than those opined by Dr. Chan. (AR 15, 480-86.) The ALJ, however, discounted Mortensen's subjective claims of restrictions that would preclude her from performing a range of sedentary work. (AR 16-18). In doing so, the ALJ expressly relied on a variety of factors, including Mortensen's reported activities, the fact that she collected unemployment during part of the period she claims she was disabled, her treatment history, the objective evidence of record, and the opinion evidence. (AR 16-18.)

The ALJ also found that Mortensen's testimony regarding her functional limitations was inconsistent with her own medical records. In particular, the ALJ noted Mortensen's testimony that she had not worked since her alleged onset date, but her treatment notes showed that she continued to work at a bar up to five days a week, eight hours a day through 2011. (AR 16.) For example, in June 2011, Dr. Plooster noted that Mortensen "works in her mom's bar . . . sometimes being on her feet for 8 hours." (AR 319.) On September 2, 2011, Dr. Thomas Zirkel, a podiatrist, noted that Mortensen "works as a bartender." (AR 268.) Later that same month, Dr. Plooster noted that Mortensen continued "to bar tend five days a week." (AR 435.) To make a bad matter worse, at the same time Mortensen continued to work as a bartender, she was collecting unemployment benefits. (AR 58, 195.) Based on these inconsistencies, the ALJ was justified in discounting Mortensen's subjective complaints as not entirely credible.

Mortensen's testimony was further undercut by reports from several physicians

11

who treated her after her knee replacement surgery in 2009. As the ALJ noted, Dr. Plooster observed in July 2009 that Mortensen's knee was only slightly swollen and she had good range of motion. (AR 16, 392.) In August 2010, Dr. Daniel Trotter, Mortensen's primary care physician, observed that she had a stable gait without numbness or tingling, and that her range of motion was normal. (AR 302.) In February 2011, Dr. Plooster noted that x-rays showed a stable implant in Mortensen's right knee. (AR 332.) In March 2011, Dr. Richard Illgen, an orthopedist, noted that that Mortensen's knee surgery had healed well without evidence of deterioration, and that she had a full range of motion. (AR 323.) Thus, the ALJ could and did reasonably find that Mortensen's continued treatment showed that her ability to walk and stand had not worsened, provided she was able to elevate her legs intermittently to reduce swelling. (AR 17, 528, 629, 706, 981.)

Nevertheless, Mortensen appears to claim that the ALJ's assessment is wrong because he failed to credit the testimony *she* gave about her own limitations. Here, however, the ALJ built an accurate and logical bridge between the evidence and his conclusion that Mortensen's view of her limitations was not fully credible. *See Shramek*, 226 F.3d at 811. The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record. *Skarbeck v. Barnhart*, 390 F. 3d 500, 505 (7th Cir. 2004).

In this instance, the ALJ adequately considered the relevant evidence of record, and explained in writing his reasoning for finding Mortensen capable of performing a

range of sedentary work. In doing so, the ALJ expressly incorporated all substantiated work-related functional limitations in his RFC finding and propounded a hypothetical that accurately reflected his RFC finding to the vocational expert, who identified a significant number of jobs in the national economy that an individual with Mortensen's RFC could perform (AR 77-78.) Based on the vocational expert's testimony, the ALJ found that Mortensen was not disabled. (AR 19-20.) As such, the ALJ's decision is supported by substantial evidence on the record as a whole.

Since Mortensen has not demonstrated that the ALJ's determination was patently wrong, nor that the court should disturb an ALJ's credibility finding, the Commissioner's decision is affirmed and Mortensen's complaint will be dismissed.

ORDER

IT IS ORDERED THAT the Commissioner's decision is AFFIRMED and the complaint filed by plaintiff Tina Lynn Mortensen is DISMISSED.

Entered this 20th day of October, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge